UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

FRANCISCO CARVAJAL JR. (son)
as administrator of the ESTATE
of FRANCISCO CARVAJAL SR., deceased, and
FRANCISCO CARVAJAL JR. individually.

                                        Plaintiff,

                    -against-

THE CITY OF NEW YORK (CITY), NEW YORK
CITY POLICE OFFICERS: POLICE OFFICER ERIN
FRAWLY, SGT JOHN HENDERSON, SGT. GOLDEN,
SGT. CHISHOLM, DET. LOUIS YERO, and POLICE
OFFICERS JOHN AND JANE DOES (1-20), the identity *Police officer*
and number of whom is presently unknown, *AND Christopher*
*Collyer and Police Officer Ashley Vanger*
                                        Defendants.
-----------------------------------------------------------------X

CIVIL ACTION NO.

CV 16 - 5410

COMPLAINT

IRIZARRY, CH.J.

LEVY, M.J.

JURY TRIAL DEMAND

Plaintiff, individually and as legal administrator of the Estate. of FRANCISCO

CARVAJAL SR., by and through his attorney Rudy Velez, Esq., complaining of the

defendants herein, upon information and belief, respectfully shows to this Court, and

alleges as follows:

## INTRODUCTION

1. This is a civil rights claim to recover money damages arising from the

excessive and unnecessary use of force, negligence and cover up of the

incident by New York City Police Officers which resulted in the wrongful

death of FRANCISCO CARVAJAL SR. on September 29, 2014 in Kings

County, City and State of New York. Members of the New York City police

department in the exercise of their duties as Police Officers and as employees

of the city of New York, used excessive and unnecessary deadly force, negligently shooting FRANCISCO CARVAJAL SR. thirteen (13) times, killing him, in an attempt to quell an alleged domestic dispute. The Police Officers attempted to cover up the shooting by fabricating official police reports, and leaked false information to the media to blame MR. CRAVAJAL for the death of another civilian, RAFAEL LAUREANO, SR. The Police claimed MR. CARVAJAL had stabbed MR. LAUREANO to death and leaked a photo of a bloodied knife they claimed CARVAJAL used to stab LAUREANO. See EXHBIT A: Christina Carrega-Woodby, Family of former bodybuilder killed by police bullet sues for 25,000,000,000 million, *New York Daily News*, July 1, 2015; See EXHIBIT B: Rocco Parascandola, Women's boy friend and ex-boyfriend die after bloody encounter in Brooklyn, *New York Daily News*, September 30, 2015. In fact, LAUREANO'S cause of death was a gunshot to the back, not a knife wound. Both CARVAJAL and LAUREANO succumbed to the gunshot wounds sustained at the hands of New York City Police Officers. See EXHIBIT C: POLICE COMPLAINT REPORT.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42U.S.C. § 1981, 1983 and the, Fourth, Fifth, Eight, and Fourteenth Amendments to the United States Constitution, and the laws of the State of New York.

3.      Jurisdiction is founded upon 28 U.S.C. 1331, §1343 (1-4), and 2202.

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

5.    Plaintiff further invokes the supplemental jurisdiction of this Court to adjudicate pendant state law claims pursuant to 28 U.S.C. § 1367.


## PARTIES

6.    That at the time of his death on September 29, 2014, Plaintiff FRANCISCO CARAVAJAL SR., was a resident of Kings County in the State of New York.


7.    Plaintiff FRANCISCO CARVAJAL JR., is the biological son of the decedent, FRANCISCO CARVAJAL SR. and is a resident of Puerto Rico. He is the legal administrator of his father's estate.

8.    Defendant CITY OF NEW YORK (CITY) is a municipal corporation organized under the laws of the State of New York and the public employer of the New York City Police officers named as defendants in this action, maintaining its principal place of business in the State of New York.

9.    That Defendant, The City of New York maintains a police force known as The New York City Police Department (NYPD), an agency of the City of New York, existing and operating by virtue of the laws of the State of New York and the City of New York, maintaining its principal place of business in the State of New York.

10.    At all times relevant herein, defendant POLICE OFFICER, DETECTIVE LUIS YERO was and still is a Police Officer of the New York City Police Department acting as an agent, servant, and employee of Defendant City of New York.

11. At all times relevant herein, defendant POLICE OFFICER, SGT. CHISHOLM, was and still is a Police Officer of the New York City Police Department; acting as an agent, servant and employee of Defendant City of New York.

12. At all times relevant herein, defendant POLICE OFFICER, ERIN FRAWLEY, was and still is a Police Officer of the New York City Police Department; acting as an agent, servant, and employee of Defendant City of New York.

13. At all times relevant herein, defendant POLICE OFFICER, SGT. JOHN HENDERSON was and still is a Police Officer of the New York City Police Department acting as an agent, servant, and employee of Defendant City of New York.

14. At all times relevant herein, defendant POLICE OFFICER, SGT GOLDEN, was and still is a Police Officer of the New York City Police Department. acting as an agent, servant, and employee of Defendant City of New York.

15. At all times relevant herein, defendant POLICE OFFICER ~~JOHN~~ *PATRICK Collyer,* *and Police Officer ASHley Uanger* and ~~JANE DOES,~~ were and still are Police Officers of the New York City Department Police Department; acting as agents, servants, and employees of Defendant City of New York.

## NOTICE OF CLAIM

16. Plaintiff, in furtherance of his causes of action, filed timely Notice of Claim against the City, in compliance with General Municipal Law Section 50, on November 26, 2014.

17. More than 30 days have elapsed since service of said notice and the City has failed to pay or adjust the claim.

18. This action has been commenced within one year and ninety days

after Plaintiff's claim arose. It was originally filled in Brooklyn Supreme Court and was removed to this court by plaintiff upon discontinuing the original Supreme Court action without prejudice on September 27, 2016.

## FACTUAL AND GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

19.    Upon information and belief, MR. FRANCISCO CARVAJAL was killed in a fusillade of bullets on September 29, 2014 after members of the NYPD were allegedly called to quell a disturbance at 820 OCEAN Parkway in Brooklyn, New York.

20.    Upon information and belief, initially the police claimed Mr. CARAVAJAL had stabbed RAFAEL LAUREANO several times and had come at them with a knife in his hands.

21.    Upon information and belief, much later it was determined by the medical examiner that MR. RAFAEL LAUREANO was never stabbed but had been shot and killed by the police officers responding.

22.    Upon information and belief, it was also alleged that MR. CARAVAJAL had been stabbed during the disturbance that led to the 911 call; but it was later also determined by the medical examiner that he was killed by being shot repeatedly by the responding police officers who apparently panicked and opened fire indiscriminately killing both civilians.

23. Upon information and belief, the officers lack of proper training and proper supervision led to this unfortunate and unnecessary double homicide taking place.

24. Upon information and belief, the Medical Examiner indicated that the manner of death was homicide and it indicated in the attached death certificate.

25. Upon information and belief, the police officers also said initially that MR.

CARAVAJAL had broken down a door with a knife and this, upon information and belief, turned out not to be so.

26.     Upon information and belief, the police officers and their employer, the NYPD, have given several conflicting and at times malicious accounts of what allegedly occurred in an attempt to cover up their own unnecessary and excessive use of force which caused the death of FRANCISCO CARVAJAL SR. See EXHIBIT D: David Goodman, officers fatally shot man who intervened in a fight, *New York Times,* October 1, 2014; See EXHIBIT E: Nick Rummell, NYPD sued in Good Samaritan death, *Court House News Service*, July 2, 2015.

27.     Upon information and belief, the police alleged that when they responded they encountered MR. LAUREANO, who was a body builder, and asked MR. LAUREANO to help break down the door, a clear violation of police rules and protocol.

28.     Upon information and belief, allegedly after breaking the door down, MR. LAUREANO ran into the apartment and allegedly struggled with MR. CRAVAJAL. MR. LAUREANO and MR. CARVAJAL had been friends for a long time and had worked out at the gym together.

29.     Upon information and belief, the police allege that as they were struggling, they opened fire killing both men.

30.     Upon information and belief, the police claim they opened fire in order to protect LAUREANO who was killed by a police bullet to the back.

31.     Upon information and belief, the police failed to provide prompt or adequate medical attention to either victim; which further contributed to their deaths.

32.     Upon information and belief, after the shooting, the police officers

concocted a story to cover up their excessive use of force and wrongful acts in killing both civilians.

33. Upon information and belief, MR. CARAVAJAL was killed as a consequence of the negligence, faulty training, faulty supervision, careless action, inactions, lack of supervision, wanton disregard for the safety of citizens, malfeasance, lack of training, lack of supervision, and the excessive and unnecessary use of force and deadly force by overreacting and subsequently discharging over 30 shots.

## Municipal Liability

34. Defendant police officers and the detectives' actions were part of a pattern and practice of subjecting civilians to excessive and unnecessary use of force and failing to address an organizational culture that tolerates and promotes the use of unnecessary and excessive force.

35. The deliberate indifference and willful blindness to this culture of violence by the NYPD ignores the Constitutional rights of the people they come in contact with and are sworn to serve and protect.

36. The NYPD has been aware of the ongoing harm and risk of serious injury to civilians for many years, based on a long and troubled history of pervasive police use of excessive force against civilians, yet have failed to correct these known deficiencies.

37. This history is the result of an organizational culture that accepts excessive and unnecessary use of force and use of deadly force as an inherent part of policing activity, particularly against minorities.

38. The NYPD's deliberate indifference to the known serious harm and risk of serious physical injury to civilians is exhibited by the culture of violence the police have directed at civilians, particularly against members of the minority community.

39. The NYPD's ongoing failure to, inter alia, screen, train, discipline and supervise its police officers ensure that use of excessive force incidents involving the public will continue with the cover-up of such incidents becoming more prevalent and systemic.

40. The acts of Defendants City, NYPD, Police Officers and Detectives, all defendants herein and the various JOHN and JANE DOES were committed under their authority as police officers hires by the defendant City of New York, members of the NYPD, vested with authority as police officers hired by the defendant City of New York, members of the NYPD, vested with authority under and by virtue of the laws of the State of New York and were therefore committed under the color of statute and the laws of the State of New York and with the knowledge and approval of their superiors who knew or should have known.

41. The Defendant City knew, or should have known, of the need for additional screening, training, supervision, disciplining, and holding accountable police officers to ensure that they would refrain from assaulting, killing and otherwise using unnecessary and excessive force to arrest individual citizens or contain situations without the need for escalation by drawing their weapons and firing at citizens repeatedly.

42. The city knew, or should have known of the need for clarity and truthfulness when reporting alleged incidents involving the discharge of police weapons, especially those involving fatalities.

43. Through intentional and deliberate indifference tantamount to turning a blind eye, the Defendant CITY failed to adequately provide for screening, training, supervision and disciplining of police officers with respect to the way in which they repeatedly and constantly abuse the minority civilian population of the City with the resulting acts of wanton and unnecessary violence going unchecked, uncontrolled and unpunished. This has lead to civilian unrest on a scale never seen before.

44. This type of intentional conduct and deliberate indifference is evidence by newspaper articles, public demonstrations, televised reports, and decisions of the courts of the State of New York, reporting, highlighting and warning that the city, the NYPD and its employees are and have engaged in various acts of misconduct and incidents of excessive use of force which includes physically and emotionally abusing individuals: ABNER LOUIMA; killing individuals, AMADOU DIALLO, ABNER GARNER, SEAN BELL, RANDOLPH EVANS AND ALBERT SPRUIL to name but a few.

## DAMAGES

45. As a direct and proximate result of defendant's negligence and actions in applying excessive use of force, FRANCISCO CARAJAL SR. was shot and killed. FRANCISCO CARAVAJAL SR. suffered unmeasurable pain while in a broken heap on the floor as his life ebbed from his body. While the police scrambled for a story that would justify their horrific conduct, FRANCISCO CARVAJAL SR. bled to death.

46. The heirs and distributes of the decedent's estate, represented by the Plaintiff, were caused to sustain the loss of support, society, love, grief, guidance, care, comfort, companionship and inheritance of the decedent's death, including, but not limited to

funeral and burial costs, traveling costs, and for the loss of his father, untold mental anguish, now and in the future. In addition, FRANCISCO CARVAJAL SR. was gainfully employed and damages include loss earnings.

47. The Plaintiff, will invoke all applicable provisions of law relative to damages, which are available to them.

## CAUSES OF ACTION

## COUNT I

### 42 U.S.C. §1983 and 1988; EXCESSIVE USE of PHYSICAL FORCE

48.    Paragraphs 1-47 are incorporated by reference as though fully set forth.

49.    The defendant City is a municipality duly incorporated under the laws of the State and City of New York.

50.    Defendant Police Officers:  Police Officer ERIN FRAWLEY, et al., were at all times relevant herein duly appointed and acting as Police Officers of the New York City Police Department.

51.    At all times mentioned herein the defendant Police Officers: Police Officer ERIN FRAWLEY, et al., were acting under color of law, to wit, under the color of the statues, ordinances, regulations, polices, customs and usages of the City and State of New York.

52.    On September 29, 2014, FRANCISCO CARVAJAL SR., was present at 820 Ocean Parkway, County of Kings, City and State of New York.

53.    The aforementioned New York City Police officers engaged

MR. CARVAJAL in an alleged attempt to physically subdue him and arrest him, but failed to do so as the officers panicked and open fire, shooting him thirteen times, killing him.

54. In the course of attempting to arrest MR. CARVAJAL SR., the Police officers shot MR. CARVAJAL SR. thirteen (13) times all while MR. CARVAJAL SR. was unarmed and these officers did cause the following fatal injuries to MR. CARVAJAL SR. leading to his death.

| | |
|---|---|
| <u>Cause of Death</u>: | Gunshot wounds of Torso with Perforations of Heart, Lungs, Liver, and intestines. |
| <u>Manner of Death</u>: | Homicide |

See EXHIBIT F: FRANCISCO CARAVAJAL SR. certificate of death.

55. That said actions by defendant Police Officers: Police officer, ERIN FRAWLEY, et al., were entirely unjustified by the actions of MR. CARVAJAL SR. and constituted an unreasonable and excessive use of force.

56. The actions alleged above deprived FRANCISCO CARVAJAL SR. of the following rights under the United States Constitution:

    a. Freedom from use of excessive and unreasonable force;

    b. Freedom from summary punishment;

    c. The right to live.

57. The direct and proximate result of defendant Police Officers: Police officer, ERIN FRAWLEY, et al., acts and police action and inaction were that

FRANCISCO CARVAJAL SR., suffered severe and horrific injuries as previously set forth, was forced to endure great pain and mental suffering that ultimately lead to his death.

58. Furthermore, defendant Police Officers: Police Officer, ERIN FRAWLEY, et al., unreasonably delayed in obtaining medical care or assistance for decedent and in fact delayed emergency medical aid despite knowledge that decedent was in obvious need of such treatment.

59.    The failure to initiate and or provide proper medical treatment by defendant, Police Officers: Police Officer, ERIN FRAWLEY, et al., was a further proximate cause of said pain, suffering, and anguish and made decedent's death more certain.

60.    Defendant Police Officers: Police Officer: ERIN FRAWLEY, et al., violated FRANCISCO CARVAJAL JR.'S (son) first, fifth and 14th Amendments rights to familial association, access to Courts, and Due Process of law.

## COUNT II

## CONSCIOUS PAIN AND SUFFERING AND BODILY INJURIES

61.    Paragraphs 1-60 are incorporated by reference as though fully set forth.

62.    That the Defendant CITY, its agents, servants and employees, was negligent in proximately causing the death of FRANCISCO CARVAJAL SR., in that the CITY allowed the aforementioned named New York City Police Officers to apply excessive physical force and had been negligent in the instruction and training it provides to its Police officers with respect to their permitted and non permitted use of force to

restrain members of the public

63. That heretofore, and at all times hereinafter mentioned and at the time of the occurrences herein, the Defendant, CITY, was engaged in the business of operating a police department, whose duty and mandate "to serve and protect the public under its charge, including both victim and suspect.

64. The defendant CITY was otherwise negligent and careless, proximately resulting in the death of FRANCISCO CARAVAJAL SR., and plaintiff relies upon the doctrine of res ipsa loquitur.

65. Defendant CITY did not take all necessary measures to avoid the subject incident and death of CARVAJAL.

66. That by reason of the foregoing, defendant CITY is liable to pay the full, fair and reasonably damages to the Plaintiff for the conscious pain and suffering of the decedent. His son, endured emotional anguish. The decedent was forced to endure great physical pain and mental suffering until he died, the police prematurely ending his life.

67. That by reason of the foregoing, the Defendant CITY is liable to the Plaintiff.

## COUNT III

### 42 U.S.C.} 1983 SUPERVISORY LIABILITY

68. Paragraphs 1-67 are incorporated by reference as though fully set forth.

69. Defendants Police Officers, SGT. JOHN HENDERSON, SGT. CHISHOLM and SGT. GOLDEN were at all time relevant herein duly appointed and

Police officer of the New York City Police Department with the rank of sergeant and specifically assigned to the scene of the shooting on September 29, 2014.

70. At all times mentioned herein defendant police officers. SGT GOLDEN, SGT JOHN HENDERSON and SGT. CHISLOM acted under color of the law, to wit, under the color of the statues, ordinances, regulations, policies, customs and usages of the City and State of New York.

71. Defendant police sergeants, were at the relevant times supervisory officers on scene at 820 Ocean Parkway, Brooklyn, N.Y. with responsibility for the investigation of the shooting incident that occurred inside the apartment of KATHY RUSSO, and the aforementioned address. The sergeants were responsible for the supervision of all the officers during and following the time the shooting incident unfolded.

72. Upon information and belief of all the sergeants, detective LOUIS YERO, and all of the initial and responding officers, conspired to lie, mislead and misrepresent to the family of RAFAEL LAUREANO SR. about the manner and circumstances surrounding RAFAEL LAUREANO SR.'s death in order to mislead the family into believing that RAFAEL LAUREANO SR. was killed by FRANISCO CARAVAJAL SR. In addition, this false account served to justice why the police shot FRANCISCO CARAJAL SR. thirteen times. The police also mislead the family of CARVAJAL and the public at large by depicting CARVAJAL as a murderer.

73. The aforementioned defendant police sergeants failed to supervise their subordinate police officers and this resulted in published media reports stating RAFAEL LAUREANO SR. had died because of knife wounds suffered at the hands of FRANCISCO CARAVAL SR. This caused great pain and alarm to CARAVJAL's

family.

74. The aforementioned defendants police sergeant's failure to supervise their subordinate officers amounted to gross negligence and a deliberate indifference to the administration of a homicide investigation in order to cover up police over reacting and the excessive and unreasonable use of physical and deadly force. All this was done with a wonton disregard for the family of FRANCISCO CARVAJAL SR.

75. The aforementioned defendant police sergeant's had personal knowledge that use of force had been used by their subordinates because they responded to the scene minutes afterward not only acquiesced in the conduct of their subordinates but also conspired to present a false account of the details of the shooting. The aforementioned defendant police sergeants indifference to the rights of MR. CARAVAJAL by failing to act properly investigate the shooting incident contributed to the violation of both MR. LAUREANO'S Civil rights as well as MR.CARVAJAL's.

76. That by reason of the foregoing, defendant City is liable to the plaintiff.

## COUNT IV

## WRONGFUL DEATH DAMAGES:   PENDANT CLAIM and WRONGFUL DEATH under 42 U.S.C. §1983

77.     Paragraphs 1-76 are incorporated by reference as though fully set forth.

78.     As a direct and proximate result of the negligence of Defendant CITY in causing the wrongful death of the decedent, the heirs, next of kin and distributes of the decedent's estate, represented by the Plaintiff's son FRANCISCO CARVAJAL,

JR. was caused to sustain pecuniary losses, loss of support and loss in inheritance loss of society, loss of love, loss of services, loss of nurture, care, and guidance, and suffered mental anguish, grief and emotional pain and suffering, and were caused to incur other necessary and reasonable expenses as a result of the decedent's death, including but not limited to funeral and burial cost, and otherwise sustained moral damages, plaintiffs will rely herein upon all laws relating to damages for conscious pain and suffering, bodily injury and wrongful death as may be held applicable.

79.    On September 29, 2014 Police Officers, specifically, police Officers: ERIN FRAWLEY et al., acting under color of law, to wit, under the color of the statues, ordinances, regulations, policies, customs and usages of the City of New York, and within the scope of their employment, did cause the wrongful death of FRANCISCO CARVAJAL SR. by inflicting multiple gunshot wounds to decedent's torso, with perforations of heart, lungs, liver, and intestines. Said homicide involved the excessive and unnecessary use of physical force. Said defendant police officers did not promptly seek medical care or assistance of decedent despite knowledge that decedent was in obvious need of such treatment.

80.    The excessive and unnecessary use of physical force against the decedent by the aforementioned Police Officers was a direct and proximate cause of his pain, suffering, mental anguish, and death, the failure to render adequate medial aid by the aforementioned Police Officers was a further proximate cause of said pain, suffering, anguish and made decedent's death more certain FRANCISCO CARVAJAL JR. as the legal representative, of the ESTATE of FRANCISCO CARVAJAL, SR., was caused to sustain pecuniary losses, loss of support and loss in inheritance, loss of society,

loss of love, loss of services, loss of nurture care and guidance, and suffered mental anguish, grief and emotional pain and suffering, and was caused to incur other necessary and reasonable expenses as a result of the decedent's death including, but not limited to funeral and curial costs and otherwise sustained moral damages.  Plaintiffs' will rely herein upon all laws relating to damages for conscious pain and suffering, bodily injury and wrongful death as may be held applicable.

81.    By reason of the foregoing, Defendant, CITY is liable to the Plaintiff for a sum to be previously determined by the jury.

## COUNT V

## PENDENT CLAIM of GROSS NEGLEGENCE and NEGLIGENCE

82.    Paragraphs 1-81 are incorporated by reference as though fully set forth.

83.    Defendant CITY has been grossly negligent and negligent in the training and monitoring of its police officers in the care and custody when serving and protecting members of the public to wit: the permissible use of physical force and deadly force in their encounters as police officers with members of the public

84.    The CITY has a duty to make sure its police officers do not violate their duties as police officers in the use of physical force and deadly force on its charges.

85.    The CITY has been grossly negligent and negligent in the instruction and training it provides to its police officers.

86.    The CITY has been on notice for many years that its Police officers play a critical role in serving and protecting its charges charges, to wit: the

general public.

87.    The CITY knew or should have known, that its grossly negligent and negligent supervision and training of its police officers created an atmosphere where police officers felt assured that their most brazen acts of excessive use of force and violence on members of the public would not be effectively investigated and prosecuted.

88.    The shooting and death of MR. CARVAJAL SR. as previously set forth, and the subsequent failure to render adequate medical aid to save the life of FRANCISCO CARVAJAL SR. were results of the CITY'S negligent conduct.

89. No negligence on the part of FRANCISCO CARVAJAL SR. contributed to the above-described incident and his subsequent death.

## COUNT VI

## PENDENT CLAIM of ASSUALT and BATTERY

90.    Paragraphs 1-89 are incorporated by reference as though fully set forth.

91.    By their actions, as set forth above, defendant Police Officer, ERIN FRAWLEY et al., committed serious acts of battery against FRANCISCO CARVAJAL SR., which included multiple gunshot wounds of the torso with perforations of heart, lungs, and intestines causing death. The inflictions of 13 bullet wounds against MR. FRANCISCO CARVAJAL SR. was excessive.

92. The CITY is responsible for the excessive physical force used by defendant Police Officers:  Police Officers: ERIN FRAWLEY, et al., because the shooting occurred while they were acting in the scope of their employment, and while

they were executing their duties, albeit in a tortious manner, as Police officers of NYC.

93. As a result of the excessive use and unnecessary of physical force used against him, and while committing this vicious assault and battery MR. FRANCISCO CARVAJAL SR., suffered severe and serious physical injuries which ultimately lead to his death.

## COUNT VII

### PENDENT CLAIMS OF NEGLIIGENCE FOR FAILING TO SERVE, PROTECT, AND OBTAIN MEDICAL TREATMENT

94. Paragraphs 1-93 are incorporated by reference as though fully set forth.

95. As New York City Police Officers, Police Officers: ERIN FRAWLEY, et al., had a duty to serve and protect and obtain adequate medical treatment for MR. FRANCISCO CARVAJAL SR. while he was bleeding in the apartment located at the aforementioned scene of the shooting.

96. These defendants knew or should have known about the severe injuries MR. FRANCISCO CARVAJAL SR. had suffered immediately after he was shot and were negligent in their failure to provide adequate medical aid.

## COUNT VIII

### PENDENT CLAIM OF PRIMA FACIE TORT

97. Paragraphs 1-96 are incorporated by reference as though set forth.

98. By their actions, as set forth above, defendant Police Officers: Police Officer: ERIN FRAWLEY, et al., inflicted harm upon MR. FRANCISCO

CARVAJAL SR. without excuse or justification, out of the excessive use of physical force.

## COUNT IX

### PENDENT CLAIM-REPONDEAT SUPERIOR

99. Paragraphs 1-98 are incorporated by reference as though fully set forth.

100. At all relevant times, all defendant Police Officers: ERIN FRAWLEY, et al., were employees of the CITY of New York and were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

101. Consequently, the CITY is liable under the doctrine of respondent superior for their tortuous actions.

## COUNT X

### 42 U.S.C. §1983 AND PENDENT CLAIM BY FRANCISCO CARVAJAL JR.

102. Paragraphs 1-101 are incorporated by reference as though fully set forth.

103. At all times, FRANCISCO CARVAJAL JR., was the son of FRANCISCO CARVAJAL SR., and is entitled to the comfort, enjoyment, and society of his father. By reason of the foregoing conduct by defendants, FRANCISCO CARVAJAL JR., was deprived of the comfort, enjoyment and society of his father, which are guaranteed to plaintiff under the laws and constitution of the State of New York. Moreover, defendants' conduct undermined FRANCISCO CARVAJAL JR's liberty interest in preserving the integrity and stability of his family from intervention by

the CITY without due process of law.

**WHEREFORE**, plaintiff requests the following relief jointly and

severally as against all of the defendants:

1. Award compensatory damages in the amount to be determined by a jury;

2. Disbursements, cost, and attorneys' fees; and

3. For such other and further relief as this Court may deem just and proper.

<u>**PLAINTIFF DEMANDS TRIAL BY JURY**</u>

**DATED:  Bronx, New York**
**September 28, 2016**

**Yours truly,**

**By:** _____

Rudy Velez (RV/7160)
Attorney for Plaintiff  FRANCISCO
CARVAJAL JR., as Administrator of
the the Estate of FRANCISCO
CARVAJAL SR., and FRANCISCO
CARVAJAL JR., individually.
930 Grand Concourse, Suite 1A,
Bronx, New York 10451
(917)674-0573
rvesq@yahoo.com

Follow @NYDailyNews

NYC CRIME    BRONX    BROOKLYN    QUEENS    UPTOWN    EDUCATION    WEATHER    OBITUARIES    NEW YORK PICS    DN PHOTOGRAPHERS



TOYOTA    CityWorldToyota.com

**FALL SAVINGS HARVEST**

**GOOD CREDIT? BAD CREDIT? MAYBE WE CAN HELP!**

3333 BOSTON RD., BRONX, NY • 888-258-4341    ▶CLICK HERE

# EXCLUSIVE: Family of former bodybuilder killed by police bullet while helping cops sues for $25M

BY CHRISTINA CARREGA-WOODBY / NEW YORK DAILY NEWS / Wednesday, July 1, 2015, 2:30 AM    A A A

172                     27

SHARE THIS URL
nydn.us/1FPlEHe

The family of a former bodybuilder killed by an errant police bullet while he was trying to rescue a friend from her crazed ex-boyfriend filed a $25 million lawsuit on Tuesday, the Daily News has learned.

Rafael Laureano, 51, was asked by cops to break down the door to his friend's home last September 29 while she was under attack from Francisco Carvajal, the Brooklyn Supreme Court suit alleged.

Katarzyna Russo, along with two young children, were locked in the bathroom of the Midwood apartment as Carvajal used two knives to chop through the door, the suit said.

After the hulky father of four busted through the front door, Carvajal, 47, rushed at them, prompting the officers to open fire, the suit said.

CHRIS ZIMMERMAN

Rafael Laureano (pictured here in 2011) died when he was accidently shot in the neck by a cop.

The officers violated NYPD protocol by not using a battering ram or getting assistance from their Emergency Service Unit to break the door down, according to the multi-million dollar lawsuit filed on behalf of the victim's namesake.

"No amount of money can replace the father of four children...the family is seeking justice," said Abe George, the lawyer for Laureano's son, Rafael Laureano Jr., 26.

Police fired 18 bullets, nine striking Carvajal, who was killed, and one fatally striking Laureano in the neck as he was in front of them when they entered the Ocean Parkway apartment, the suit alleged.



TOYOTA    CityWorldToyota.com

**FALL SAVINGS HARVEST**

**GOOD CREDIT? BAD CREDIT? MAYBE WE CAN HELP!**

▶CLICK HERE

3333 BOSTON RD., BRONX, NY
888-258-4341

## EDITOR'S PICKS

**Wisconsin man had sex with donkey in barn: cops**
A man admitted to having sex with a donkey at his workplace because his...



**Mom thought baby she threw was stillborn**
The disturbed mom charged with tossing her newborn out of a Bronx building...



Sponsor Content Provided By    synchrony

**The Latest in Cyber Security: More Than Protecting Passwords**
With our most personal information leaving the locked filing cabinets of old...



JEFFERSON SIEGEL NEW YORK DAILY NEWS

From l., Justica Laureano, Jonathan Sanabria and Rafael Laureano Jr. are suing in death of their bodybuilder father, Rafael Sr.

"When I got to scene I asked three cops what happened to my father, no one wanted to tell me anything," his heartbroken son told The News.

He said he had to show his military identification at the hospital to learn his father was stabbed "multiple times" to death.

"I couldn't believe it. It was hard to hear," he said.



HANDOUT

This was one of the knives recovered from the terrifying scene.

"I thought he was strong enough to survive [getting stabbed,] but Rafael said, 'No he died.' I couldn't believe it," said another son, Jonathan Sanabria, 27.

A few days later the city medical examiners determined the dad was not stabbed but was shot by the NYPD.

"The NYPD and the city has yet to provide the Laureano family with the truth of what led to [their father's] death," said George.

A city Law Department spokeswoman said they will review the suit.

A police official reiterated earlier statements that Laureano ran into the apartment after cops forced open the door. One of the cops grabbed Laureano





**Lawyer says he has proof Jose Canseco was paid on investment**
The lawyer for the media executive who was threatened by Jose Canseco says...



**Cops ID man found fatally shot in face on Queens street**
Police have identified a man found with fatal bullet wounds to his face on...



**Suspect in Queens guitar theft got caught on camera: cops**
A man who walked out of a Queens Guitar Center with a pricey Gibson under...

## PROMOTED STORIES





**Taking Medication? You Should Know About These 8 Scary Food Interactions**
(AARP)



**Her Real Name Will Make Your Jaw Drop!!!**
(Your Daily Dish)



**11 Forgotten Actors Who Quietly Disappeared From Hollywood**
(Answers.com)



**WATCH: Cat Can't Stop Hugging Dog After 10 Days Apart**
(Pet360)

Recommended by

## EDITOR'S PICKS



**Woman tries to ditch plea deal in credit card case**
A Brazilian babe linked to Armand Assante had her charges reduced...



**EXCLUSIVE: Manhattan man beaten harder after insulting cops**
A Manhattan man trash-talked cops as they beat him down, so they pummeled...

Like    Follow @NYDailyNews

NEW YORK   NEWS   POLITICS   SPORTS   ENTERTAINMENT   OPINION   LIVING   AUTOS

EVENTS   NYC CRIME   BRONX   BROOKLYN   QUEENS   UPTOWN   EDUCATION   WEATHER   OBITUARIES   NEW YORK PICS   DN PHOTOGRAPHERS

# Woman's boyfriend and ex-boyfriend die after bloody encounter in Brooklyn

**Female bodybuilder Katarzyna Russo's ex-boyfriend Francisco Carvajal invaded her Brooklyn apartment Monday night, bringing with him knives and trying to get into a locked bathroom to reach Russo and her two children. Her boyfriend, Rafael Laureano, tried to help, but died shortly after being stabbed and hit by one bullet from cops. Cops gunned down Carvajal when he ignored commands to drop his weapon.**

BY ROCCO PARASCANDOLA , ERIK BADIA , LARRY MCSHANE / NEW YORK DAILY NEWS /

Published: Tuesday, September 30, 2014, 10:46 AM / Updated: Tuesday, September 30, 2014, 10:44 PM    A A A

122     16        42        SHARE THIS URL

nydn.us/1mLtaRY


EARLY BOOKING BONANZA! SAVE UP TO $1000 on your 2015 vacation*

Plus ADDITIONAL $200 OFF*

LIBERTY TRAVEL



THEODORE PARISIENNE/THEODORE PARISIENNE

The ex-boyfriend of Katarzyna Russo (l.) tried to break into her home and was carrying knives.

**RELATED STORIES**



Man kills wife, son in double murder-suicide: cops



Rapper Joe Budden a wanted man after being accused of beating ex-girlfriend

Katarzyna Russo, sitting outside her blood-soaked Brooklyn apartment Tuesday morning, knew she and her children were lucky to survive a love-triangle slaughter that had a Stephen King twist.

The bodybuilder and her two children had cowered behind a locked bathroom door Monday night after her knife-wielding ex-boyfriend invaded their home on Ocean Parkway in Midwood like Jack Nicholson's deranged caretaker in "The Shining."

Police then gunned down hulking attacker Francisco Carvajal after he plunged a knife into Russo's current beau — who was mortally injured while rushing to the terrified woman's aid.

"We are doing all right, all things considered," Russo told the Daily News on Tuesday after her family miraculously escaped intact from the nightmarish attack and the police bullets that brought it to a tragic end.

"The kids are not physically harmed," she continued outside the seventh-floor apartment, where dried blood was spattered across the floor and hallway.

"They saw everything."

**EDITOR'S PICKS**



**'Greedy infiltrators': Bushwick coffee shop bashed after anti-Semitic online rant**

The owner of an artisanal Bushwick coffee shop is getting his beans roasted



**Is NYC prepared for a possible Ebola outbreak?**

New Yorkers can sleep easy — doctors and city health officials say that there's almost no chance of



**Purported perv teacher not allowed at school: principal**

The principal at Brooklyn Technical High School says an accused pervert teacher was barred from the school



**Cops tell black teens 'get out' of Park Slope: witness**

New York cops demanded a group of black teenagers "get out" of Brooklyn's Park Slope, a witness claimed.

**Man run down after allegedly shooting 3 in Brooklyn**

Cops busted a 25-year-old Baltimore ex-con they claim was involved in a triple shooting on a Brooklyn

**PROMOTED STORIES**



**You Too, Can Create a Runner with These Easy Steps**
(RunHaven)

**These Celebrities are so Dumb It Hurts**

Case 1:16-cv-05410-AMD-RK    Document 1    Filed 09/28/16    Page 25 of 30 PageID #: 25





HANDOUT



(RantLifestyle)

**Latina Selfies That Put Kim K To Shame!**
(Lossip)



**Playboy Bunnies: Then and Now**
(AARP)

Recommended by



Bronx shelter helps kids escape domestic violence

If the start of the horror show seemed like a King novel, the end was more of a Quentin Tarantino flick.

Cops blasted Carvajal, 47, after he stabbed Russo's new man, Rafael Laureano, 51, who had rushed past five cops to protect his new flame, police sources said. Three cops opened fire when Carvajal ignored commands to drop the knife, police said.

During the chaotic scene, Laureano, whom Russo had met at a local gym, was also apparently hit on his right side by an errant police bullet, cop sources said. An autopsy will determine if he was killed by the knife or the apparent gunshot wound.

If it turns out he died by police gunfire, law enforcement sources said, the department will take a close look at the officer's tactics. But, they cautioned, it is believed the officers had little recourse given the suspect's actions.

Neighbors and police sources described the horrific attack that preceded the arrival of cops in which a desperate Russo begged Carvajal — who had a knife in each hand — for the lives of autistic son Anthony, 9, and daughter Lilly, 7.

## EDITOR'S PICKS

**Brooklyn time capsule from 1950 proves to be soggy bust**
A time capsule buried in 1950 outside the former NYC Transit headquarters in Brooklyn proved to be as



**Brooklyn prosecutor to help prisoners fight to prove innocence**
Abe George was a candidate against longtime DA Charles Hynes, but he bowed out of the race and



**Man, girlfriend beat up mom in Upper West Side apartment: cops**
Allan Andre, 27, and Andrea Bykovsky, 26, of Queens, were arraigned on



**Brooklyn man dies after deadly blaze claims his apartment**
The blaze began shortly after 3 a.m. in the man's first floor apartment at 740 Herkimer St. in Bedford-



**Victim once assaulted by teacher accused of sexual antics speaks out**
A predatory teacher accused of loathsome sexual antics with a half-



**Queens man stabbed by samurai sword-wielding stepson: cops**
The stepson, 23, stabbed his stepfather in the chest and hand with the



**City teachers convicted of wrongdoing often return to classroom: report**
New York laws make it so hard to fire bad instructors



**Teacher cannot be**    A Manhattan court has told



| | |
|---|---|
| Nick/AKA/Maiden: RALPH | Gang/Crew Affiliation: |
| UMOS: NO | Name: |
| Sex/Type: MALE | Identifiers: |
| Race: WHITE | |
| Age: 51 | |
| Date Of Birth: 09/22/1963 | Will View Photo: NO |
| Disabled? NO | Will Prosecute: NO |
| Is this person not Proficient in English?: NO | Notified Of Crime Victim Comp. Law: NO |
| If Yes, Indicate Language: | |
| N.Y.C.H.A Resident? NO | |
| Is Victim fearful for their safety / life? NO | |
| Escalating violence / abuse by suspect? NO | |
| Were prior DIR's prepared for C/V? NO | |

| LOCATION | ADDRESS | CITY | STATE/COUNTRY | ZIP | APT/ROOM |
|---|---|---|---|---|---|
| HOME-PERMANENT | 1812 EAST 18 STREET | BROOKLYN | NEW YORK | | 1A |

Phone #: HOME: Not Provided/Unavailable CELL: Not Provided/Unavailable BUSINESS: Not Provided/Unavailable E-MAIL: Not Provided/Unavailable

| Action against Victim: CUT/SLASHED/STABBED | Actions Of Victim Prior To Incident: DISPUTE |
|---|---|
| Victim Of Similar Incident: | If Yes, When And Where |

| WANTED: # 1 of 1 | Name: CARVAJAL, FRANCISCO | Complaint#: 2014-070-07597 | Arrested: NO |
|---|---|---|---|

| | | |
|---|---|---|
| Nick/AKA/Maiden: | Height: | Order Of Protection: NO |
| Sex: | Weight: | Issuing Court: |
| Race: | Eye Color: | Docket #: |
| Age: | Hair Color: | Expiration Date: |
| Date Of Birth: | Hair Length: | Order of Protection Violated? |
| U.S. Citizen: | Hair Style: | Does Suspect abuse Drugs / Alcohol? NO |
| Place Of Birth: | Skin Tone: | Suspect threatened /attempted suicide? NO |
| Is this person not Proficient in English?: | Complexion: | Is the suspect Parole / Probation? NO |
| If Yes, Indicate Language: | | Relation to Victim: UNKNOWN/NONE |
| Accent: | | Living together: NO |
| | | Can be Identified: YES |

Gang/Crew Affiliation:
Name:
Identifiers:

| LOCATION | ADDRESS | CITY | STATE/COUNTRY | ZIP | APT/ROOM | HOW LONG? | RES. PCT |
|---|---|---|---|---|---|---|---|

Phone #:

N.Y.C.H.A. Resident: NO  N.Y.C. Housing Employee:  On Duty:

Development:  N.Y.C. Transit Employee:

Physical Force:

**Weapons:**

| Gun: | | |
|---|---|---|
| Weapon Used/Possessed: USED/DISPLAYED | Make: | Recovered: NO |
| Non-Firearm Weapon: CUTTING INSTRUMENT | Caliber: | Serial Number Defaced: |
| Other Weapon Description: KNIFE | Color: | Serial Number: |
| | Type: | |



𝕿𝖍𝖊 𝕹𝖊𝖜 𝖀𝖔𝖗𝖐 𝕿𝖎𝖒𝖊𝖘     http://nyti.ms/1nOeVws

**N.Y. / REGION**

# Officers Fatally Shot Man Who Intervened in a Fight

By J. DAVID GOODMAN    OCT. 1, 2014

An unarmed man who thrust himself into a confrontation between police officers and a knife-wielding assailant in a Brooklyn apartment died from a bullet wound to the back after the police opened fire, the New York City medical examiner said on Wednesday.

The man, Rafael Laureano, had pushed his way past officers to confront the assailant, Francisco Carvajal, who also died in the shooting on Monday.

"It looks like he was inadvertently hit," Stephen Davis, the Police Department's top spokesman, said of Mr. Laureano. He declined to identify the three officers who fired.

The police had initially said that Mr. Laureano was stabbed before officers arrived and that he died from those wounds. However, an autopsy on Wednesday found no stab wounds to his body.

The chaotic scene began a little before 7 p.m., when Mr. Carvajal, 47, came to the apartment of his former girlfriend, Kathy Russo. At first she barred his entry, Mr. Davis said, and called her friend, Mr. Laureano, 52, who came to the apartment.

When Mr. Carvajal returned, she opened the door to tell him to leave, but he pulled out a knife and pushed his way in, Mr. Davis said. He said that Mr. Carvajal and Mr. Laureano grappled as Ms. Russo, 35, locked herself and her children in a bathroom.

At some point, Mr. Laureano fled. In the hallway, he met police officers — a sergeant and four patrol officers — responding to 911 calls of a woman being attacked with a knife.





# Courthouse News Service

Thursday, July 02, 2015   Last Update: 1:20 AM PT

### NYPD Sued in Good Samaritan Death
By NICK RUMMELL

Tweet  G+1    ShareThis

BROOKLYN, N.Y. (CN) - New York City police officers shot and killed a good Samaritan coming to the aid of his neighbor, then falsified their reports to try to cover up their grave mistake, the victim's son claims.

In a complaint filed on Tuesday, Rafael Laureano, Jr. says his father was shot and killed on Sept. 29, 2014, by the unidentified police officers who responded to a 911 call from non-party Kathy Russo, a Brooklyn woman being attacked by her ex-boyfriend.

Prior to calling the police. Russo called Rafael Laureano, Sr., her friend and a former bodybuilder, and asked him to subdue the boyfriend, Francisco Carvajal, who had allegedly forced his way into her apartment and was attacking her with a knife, the complaint says.

By the time police arrived, Laureano was outside Russo's Sheepshead Bay apartment and Carvajal had locked the apartment door. According to the complaint, responding police asked Laureano, a 51 year old father of four, to help break down Russo's door.

Press accounts vary on what transpired next. The most consistent detail is that as the police and Laureano entered the apartment, Carvajal was attempting to hack through the door of a bathroom, where Russo and her two young children were hiding. Some press accounts said Laureano and Carvajal grappled briefly.

The outcome, however, is beyond dispute: both Carvajal and Laureano were shot and killed by the police officers, who allegedly fired more than a dozen shots at the men.

The police initially said Carvajal stabbed Laureano to death, but according to the complaint, that changed after the city medical examiner concluded the Good Samaritan had suffered no stab wounds, but had instead died from a bullet wound to his back.

On Oct. 1, 2014, Deputy Police Commissioner Stephen Davis said Laureano "was inadvertently shot by a police bullet," but explained that the incident took place in "very close quarters" and that "Carvajal was coming at the officers with a knife and they had to fire," the complaint says.

The dead man's son accuses the two officers of violating New York Police Department procedure, which mandates that officers can use deadly force only if they believe they or another person face "imminent death or serious physical injury."

"It's a terrible tragedy," said Abe George, the attorney representing the Laureano family in the lawsuit.

George said the family tried to settle with the city, and has filed FOIA requests for additional information related to the shooting, but were denied in both situations.

"The family did not want to bring this suit," said George, a former prosecutor for Manhattan and Brooklyn. "It's going to be a messy situation when we start depositing some of these officers."

The police department did not immediately respond to requests for comment from Courthouse News.

# DEATH TRANSCRIPT

DATE FILED   THE CITY OF NEW YORK – DEPARTMENT OF HEALTH AND MENTAL HYGIENE

NEW YORK CITY
DEPARTMENT OF HEALTH
AND MENTAL HYGIENE
OCTOBER 03, 2014 11:23 AM

## CERTIFICATE OF DEATH   Certificate No. 156-14-039230

**1. DECEDENT'S LEGAL NAME**   Francisco Antonio Carvajal Ramirez
(First, Middle, Last)

| Place Of Death | 2a. New York City | 2c. Type of Place | 4 ☐ Nursing Home/Long Term Care Facility | 2d. Any Hospice care in last 30 days | 2e. Name of hospital or other facility (if not facility, street address) |
|---|---|---|---|---|---|
| | 2b. Borough **Brooklyn** | 1 ☐ Hospital Inpatient  5 ☐ Hospice Facility  2 ☐ Emergency Dept./Outpatient  6 ☐ Decedent's Residence  3 ☐ Dead on Arrival  7 ☒ Other Specify **Apartment** | | 1 ☐ Yes  2 ☒ No  3 ☐ Unknown | 820 Ocean Parkway 714, Brooklyn, New York 11230 |

| Date and Time of Death or Found Dead | 3a. (Month) **September** | (Day) **29** | (Year-yyyy) **2014** | 3b. Time **07:30** | ☐ AM ☒ PM | 4. Sex **Male** | 5. OCME Case No. **K14004800** |
|---|---|---|---|---|---|---|---|

### 6. CAUSE OF DEATH (To be filled in by the OCME)

| PART I | | | APPROXIMATE INTERVAL ONSET TO DEATH |
|---|---|---|---|
| a. Immediate cause | Gunshot Wounds Of Torso With Peforations Of Heart, Lungs, Liver And | | - |
| b. Due to or as a consequence of | Intestines | | - |
| c. Due to or as a consequence of | | *** | *** |
| PART II | Other significant conditions contributing to death but not resulting in the underlying cause given in Part I. Include operation information. *** | | |

| 7a. Injury Date (mm dd yyyy) **09 29 2014** | 7b. Time **07:30** ☐ AM ☒ PM | 7c. At Work 1 ☐ Yes 2 ☒ No | 7d. Place of Injury – At home, factory, street, etc. **Apartment** | |
|---|---|---|---|---|
| | | | 7e. Location **820 Ocean Parkway 714, Brooklyn, New York 11230** | |

7f. How Injury Occurred **Shot**

| 7g. If Transportation Injury Specify ☐ Driver/Operator ☐ Pedestrian ☐ Passenger ☐ Other Specify _____ | 8. Manner of Death ☐ Pending further study ☐ Natural ☒ Homicide ☐ Accident ☐ Suicide ☐ Undetermined | 9. Autopsy ☒ Yes ☐ No Autopsy Pursuant to Law ☐ No Autopsy | 10. On the basis of examination and/or investigation, in my opinion, death occurred due to the causes and manner as stated. Certifier Signature *Kristin Roman* D.O. M.D. Date OCT-01-2014 Signature Electronically Authenticated Certifier Name (Print) Kristin Roman  **Medical Examiner** (Medical Investigator) (Deputy Chief) (Chief) (Medical Examiner) |
|---|---|---|---|

| 11a. Usual Residence State **Connecticut** | 11b. County **Fairfield** | 11c. City or Town **Stamford** | 11d. Street and Number **42 Mariners Lane** | Apt. No. | ZIP Code **06902** | 11e. Inside City Limits? 1 ☒ Yes 2 ☐ No |
|---|---|---|---|---|---|---|

| 12. Date of Birth (Month) (Day) (Year-yyyy) **February 20 1967** | 13. Age at last birthday (years) **47** | Under 1 Year Months / Days | Under 1 Day Hours / Minutes | 14. Social Security No. **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** |
|---|---|---|---|---|

| 15a. Usual Occupation (Type of work done during most of working life. Do not use "retired") **Security** | 15b. Kind of business or industry **Jacob K. Javits Convention Center** | 16. Aliases or AKAs *** *** |
|---|---|---|

| 17. Birthplace (City & State or Foreign Country) **Puerto Rico** | 18. Education (Check the box that best describes the highest degree or level of school completed at the time of death) 1 ☐ 8th grade or less: none  2 ☐ 9th – 12th grade: no diploma  3 ☒ High school graduate or GED  4 ☐ Some college credit, but no degree  5 ☐ Associate degree (e.g., AA, AS)  6 ☐ Bachelor's degree (e.g., BA, AB, BS)  7 ☐ Master's degree (e.g., MA, MS, MEng, MEd, MSW, MBA)  8 ☐ Doctorate (e.g., PhD, EdD) or Professional degree (e.g., MD, DDS, DVM, LLB, JD) |
|---|---|

| 19. Ever in U.S. Armed Forces? 1 ☐ Yes 2 ☒ No | 20. Marital/Partnership Status at time of death 1 ☒ Married  2 ☐ Domestic Partnership  3 ☐ Divorced  4 ☐ Married, but separated  5 ☐ Never Married  6 ☐ Widowed  7 ☐ Other, Specify _____  8 ☐ Unknown | 21. Surviving Spouse's/Partner's Name (if wife, name prior to first marriage) (First, Middle, Last) **Lorena Andrade** |
|---|---|---|

| 22. Father's Name (First, Middle, Last) **Jose Antonio Carvajal** | 23. Mother's Maiden Name (Prior to first marriage) (First, Middle, Last) **Catalina Del Carmen Ramirez** |
|---|---|

| 24a. Informant's Name **Lorena Andrade Carvajal** | 24b. Relationship to Decedent **Spouse** | 24c. Address (Street and Number) **42 Mariners Lane, Stamford, Connecticut** | Apt. No. | City & State | ZIP Code **06902** |
|---|---|---|---|---|---|

| 25a. Method of Disposition 1 ☒ Burial  2 ☐ Cremation  3 ☐ Entombment  4 ☐ City Cemetery  5 ☐ Other Specify _____ | 25b. Place of Disposition (Name of cemetery, crematory, other place) **Municipal Cemetery** |
|---|---|

| 25c. Location of Disposition (City & State or Foreign Country) **Rio Piedras, Puerto Rico** | 25d. Date of Disposition mm **10** dd **06** yyyy **2014** |
|---|---|

| 26a. Funeral Establishment **R.G. Ortiz Funeral Home, Inc.(Broadway)** | 26b. Address (Street and Number) City & State **4425 Broadway, New York, New York** ZIP Code **10040** |
|---|---|

VR 16 (Rev. 01/03)

This is to certify that the foregoing is a true copy of a record on file in the Department of Health and Mental Hygiene. The Department of Health and Mental Hygiene does not certify to the truth of the statements made thereon, as no inquiry as to the facts has been provided by law.

Steven P. Schwartz, Ph.D., City Registrar



# THE CITY OF NEW YORK
## VITAL RECORDS CERTIFICATE

## DEATH TRANSCRIPT

DATE FILED   THE CITY OF NEW YORK – DEPARTMENT OF HEALTH AND MENTAL HYGIENE

NEW YORK CITY
DEPARTMENT OF HEALTH
AND MENTAL HYGIENE
OCTOBER 03, 2014 11:23 AM

### CERTIFICATE OF DEATH   Certificate No. 156-14-039230

**1. DECEDENT'S LEGAL NAME** Francisco Antonio Carvajal Ramirez
(First, Middle, Last)

| Place Of Death | 2a. New York City | 2c. Type of Place | 4 ☐ Nursing Home/Long Term Care Facility | 2d. Any Hospice care in last 30 days | 2e. Name of hospital or other facility (if not facility, street address) |
|---|---|---|---|---|---|
| | 2b. Borough **Brooklyn** | 1 ☐ Hospital Inpatient 5 ☐ Hospice Facility 2 ☐ Emergency Dept/Outpatient 6 ☐ Decedent's Residence 3 ☐ Dead on Arrival 7 ☒ Other Specify **Apartment** | | 1 ☐ Yes 2 ☒ No 3 ☐ Unknown | 820 Ocean Parkway 714, Brooklyn, New York 11230 |

| Date and Time of Death or Found Dead | 3a. (Month) **September** | (Day) **29** | (Year-yyyy) **2014** | 3b. Time **07:30** | ☐ AM ☒ PM | 4. Sex **Male** | 5. OCME Case No. **K14004800** |
|---|---|---|---|---|---|---|---|

| 6. CAUSE OF DEATH | PART I | a. Immediate cause | Gunshot Wounds Of Torso With Peforations Of Heart, Lungs, Liver And | - |
|---|---|---|---|---|
| | | b. Due to or as a consequence of | Intestines | - |
| | | c. Due to or as a consequence of | *** | *** |
| | PART II | Other significant conditions contributing to death but not resulting in the underlying cause given in Part I. Include operation information. *** | | |

| 7a. Injury Date (mm dd yyyy) **09 29 2014** | 7b. Time **07:30** ☐ AM ☒ PM | 7c. At Work 1 ☐ Yes 2 ☒ No | 7d. Place of Injury – At home, factory, street, etc. | **Apartment** |
|---|---|---|---|---|
| | | | 7e. Location | 820 Ocean Parkway 714, Brooklyn, New York 11230 |

7f. How Injury Occurred   **Shot**

| 7g. If Transportation Injury Specify ☐ Driver/Operator ☐ Pedestrian ☐ Passenger ☐ Other Specify _____ | 8. Manner of Death ☐ Pending further study ☐ Natural ☒ Homicide ☐ Accident ☐ Suicide ☐ Undetermined | 9. Autopsy ☒ Yes ☐ No Autopsy Pursuant to Law ☐ No Autopsy | 10. On the basis of examination and/or investigation, in my opinion, death occurred due to the causes and manner as stated. Certifier Signature *Kristin Roman* Signature Electronically Authenticated Certifier Name (Print) **Kristin Roman** (Medical Investigator) (Deputy Chief) (Chief) (Medical Examiner) | D.O. M.D. Date OCT-01-2014 **Medical Examiner** |
|---|---|---|---|---|

| 11a. Usual Residence State **Connecticut** | 11b. County **Fairfield** | 11c. City or Town **Stamford** | 11d. Street and Number **42 Mariners Lane** | Apt. No. | ZIP Code **06902** | 11e. Inside City Limits? 1 ☒ Yes 2 ☐ No |
|---|---|---|---|---|---|---|

| 12. Date of Birth (Month) **February** (Day) **20** (Year-yyyy) **1967** | 13. Age at last birthday (years) **47** | Under 1 Year Months / Days | Under 1 Day Hours / Minutes | 14. Social Security No. **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** |
|---|---|---|---|---|

| 15a. Usual Occupation (Type of work done during most of working life. Do not use "retired") **Security** | 15b. Kind of business or industry **Jacob K. Javits Convention Center** | 16. Aliases or AKAs *** *** |
|---|---|---|

| 17. Birthplace (City & State or Foreign Country) **Puerto Rico** | 18. Education (Check the box that best describes the highest degree or level of school completed at the time of death) 1 ☐ 8th grade or less: none 2 ☐ 9th – 12th grade: no diploma 3 ☒ High school graduate or GED 4 ☐ Some college credit, but no degree 5 ☐ Associate degree (e.g. AA, AS) 6 ☐ Bachelor's degree (e.g. BA, AB, BS) 7 ☐ Master's degree (e.g. MA, MS, MEng, MEd, MSW, MBA) 8 ☐ Doctorate (e.g. PhD, EdD) or Professional degree (e.g. MD, DDS, DVM, LLB, JD) |
|---|---|

| 19. Ever in U.S. Armed Forces? 1 ☐ Yes 2 ☒ No | 20. Marital/Partnership Status at time of death 1 ☒ Married 2 ☐ Domestic Partnership 3 ☐ Divorced 4 ☐ Married, but separated 5 ☐ Never Married 6 ☐ Widowed 7 ☐ Other, Specify 8 ☐ Unknown | 21. Surviving Spouse's/Partner's Name (If wife, name prior to first marriage)(First, Middle, Last) **Lorena Andrade** |
|---|---|---|

| 22. Father's Name (First, Middle, Last) **Jose Antonio Carvajal** | 23. Mother's Maiden Name (Prior to first marriage) (First, Middle, Last) **Catalina Del Carmen Ramirez** |
|---|---|

| 24a. Informant's Name **Lorena Andrade Carvajal** | 24b. Relationship to Decedent **Spouse** | 24c. Address (Street and Number) Apt. No. City & State **42 Mariners Lane, Stamford, Connecticut** | ZIP Code **06902** |
|---|---|---|---|

| 25a. Method of Disposition 1 ☒ Burial 2 ☐ Cremation 3 ☐ Entombment 4 ☐ City Cemetery 5 ☐ Other Specify ___ | 25b. Place of Disposition (Name of cemetery, crematory, other place) **Municipal Cemetery** |
|---|---|

| 25c. Location of Disposition (City & State or Foreign Country) **Rio Piedras, Puerto Rico** | 25d. Date of Disposition mm **10** dd **06** yyyy **2014** |
|---|---|

| 26a. Funeral Establishment **R.G. Ortiz Funeral Home, Inc.(Broadway)** | 26b. Address (Street and Number) City & State **4425 Broadway, New York, New York 10040** | ZIP Code |
|---|---|---|

VR 16 (Rev. 01/09)

This is to certify that the foregoing is a true copy of a record on file in the Department of Health and Mental Hygiene. The Department of Health and Mental Hygiene does not certify to the truth of the statements made thereon, as no inquiry as to the facts has been provided by law.



Steven P. Schwartz, Ph.D., City Registrar


